THEODORE JAMES WHITE, III,

                                        Plaintiff,

                    -vs-

RENTGROW, INC., and SUNSHINE
RESEARCH, INC.,

                                        Defendants.

Case No.:

**COMPLAINT**

**(JURY TRIAL DEMANDED)**

Plaintiff Theodore James White, III ("Plaintiff" or "Mr. White"), by and through his

attorneys, brings the following Complaint and states as follows:

## INTRODUCTION

1.      This is an individual action for damages, costs and attorneys' fees brought against

RentGrow, Inc. ("Defendant RentGrow" or "RentGrow") and Sunshine Research, Inc.

("Defendant Sunshine Research" or "Sunshine Research") (collectively, "Defendants") pursuant

to the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq*. ("FCRA") and the California

Investigative Consumer Reporting Agencies Act ("ICRAA"), Cal. Civil Code §§ 1786, *et seq*.

2.      Defendant RentGrow is a consumer reporting agency that compiles and maintains

files on consumers on a nationwide basis. It sells consumer reports, also known as "tenant

screening reports," generated from its database, or the databases of wholesale criminal records

vendors it contracts with, and furnishes these consumer reports to landlords who use the reports to

make decisions regarding whether to rent to certain consumers.

3.      Defendant RentGrow falsely reported to Mr. White's potential landlord that Mr.

White is a convicted felon. In fact, Mr. White is not a convicted felon. A Dismissal Order from

Sacramento County, California court records, dated October 13, 2015, confirms that a plea of not

guilty was entered, the verdict of guilty was set aside, and that the accusatory pleading was dismissed pursuant to Section 1203.4 of the Penal Code.

4.    Mr. White disputed the false information in Defendant RentGrow's tenant screening report and provided it with a copy of the Dismissal Order from Sacramento County, confirming that he was not a convicted felon. Two days later, Defendant RentGrow corrected Mr. White's tenant screening report and provided him and his potential landlord with an updated copy.

5.    However, now that the grossly inaccurate and stigmatizing criminal record had been disclosed to Mr. White's potential landlord, Mr. White was required to start the rental application process all over again and had to resubmit his rental application, financial information, and undergo a second background check.

6.    Four days later, after Defendant RentGrow had been provided a copy of the Dismissal Order and been put on actual notice that Mr. White was not a convicted felon, Mr. White's potential landlord ordered a second tenant screening report from Defendant RentGrow.

7.    Making matters even worse, Defendant RentGrow once again falsely reported to Mr. White's potential landlord that Mr. White is a convicted felon.

8.    The second time around, Defendant RentGrow received the inaccurate criminal record information from Defendant Sunshine Research, who refused to correct and update the inaccurate criminal record information in its database even after Mr. White disputed it and emailed Defendant Sunshine Research a copy of the Dismissal Order.

9.    Defendants' inaccurate reporting cost Mr. White his ability to rent the home of his choice that was suitably accommodating of his wife, three young children, and pets, causing him physical injury as a result of emotional distress, embarrassment, inconvenience, anxiety, fear of homelessness, and financial loss.

10.     Defendants' inaccurate reporting could have been easily remedied had Defendants either consulted current public record or the Dismissal Order that Mr. White provided to them, prior to selling inaccurate criminal record information and issuing Mr. White's report to his prospective landlord.

11.     Defendants do not employ reasonable procedures to ensure the maximum possible accuracy of the information they report regarding consumers. Defendants' failure to employ reasonable procedures resulted in Mr. White's report being inaccurate on two different occasions.

12.     As a result of Defendants' conduct, Mr. White brings claims for failure to use reasonable procedures to ensure maximum possible accuracy based on § 1681e(b) of the FCRA and § 1786.20 of the ICRAA.

## THE PARTIES

13.     Plaintiff Theodore James White, III, is a natural person who resides in Nashville, Tennessee, and who is a "consumer" protected by the FCRA.

14.     Defendant RentGrow, Inc. ("RentGrow") is a Delaware corporation doing business throughout the United States, including in the State of Tennessee, and has a principal place of business located at 307 Waverly Oaks Road, Suite 301, Waltham, MA 02452.

15.     Among other things, Defendant RentGrow sells consumer reports, often called background checks, tenant screening reports, and credit reports, to landlords for their use in deciding whether to rent to a prospective tenant. These reports are sold to landlords in connection with a business transaction initiated by the consumer.

16.     Defendant RentGrow is a consumer reporting agency as defined at 15 U.S.C. § 1681a(f) because for monetary fees, it regularly engages in whole or in part in the practice of assembling and/or evaluating consumer credit information or other information on consumers for

3

the purpose of furnishing consumer reports for tenant screening purposes to third parties, and uses interstate commerce, including the Internet, for the purpose of preparing and furnishing such consumer reports.

17.     Defendant RentGrow is an "investigative consumer credit reporting agency" as defined by Cal. Civ. Code § 1786.2(d).

18.     Defendant Sunshine Research, Inc. ("Sunshine Research") is a Florida corporation and nationwide investigative firm, specializing in criminal searches, does business throughout the United States, including in the State of Tennessee, and has a principal place of business located at 1501 S. Pinellas Avenue, Suite Q, Tarpon Springs, FL 34689.

19.     Defendant Sunshine Research provides consumer reports for employment and tenant screening purposes.

20.     Among other things, Defendant Sunshine Research provides consumer reports to other consumer reporting agencies who provide the information therein to employers and landlords. Employers and landlords use these reports to make important decisions, such as whether to hire, terminate, or promote the consumers who are the subjects of the reports, or whether to grant tenancy to such consumers.

21.     Defendant Sunshine Research does not merely collect public record information, but rather, assembles, filters, and formats the information as part of the services that it provides to its customers, other consumer reporting agencies.

22.     Defendant Sunshine Research is a consumer reporting agency as defined at 15 U.S.C. § 1681a(f) because for monetary fees, it regularly engages in whole or in part in the practice of assembling and/or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports for employment and tenant screening purposes to

4

third parties, and uses interstate commerce, including the Internet, for the purpose of preparing and furnishing such consumer reports.

23.     Defendant Sunshine Research is an "investigative consumer credit reporting agency" as defined by Cal. Civ. Code § 1786.2(d).

## JURISDICTION AND VENUE

24.     This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which allows claims under the FCRA to be brought in any appropriate court of competent jurisdiction.   This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

25.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## THE FCRA AND ICRAA'S PROTECTIONS FOR HOUSING APPLICANTS

26.     Despite its name, the Fair Credit Reporting Act covers more than just credit reporting, it regulates all consumer reports such as the tenant screening reports prepared in Mr. White's name.

27.     In the parlance of the FCRA, background checks and tenant screening reports are "consumer reports," and providers of background checks and tenant screening reports are "consumer reporting agencies." 15 U.S.C. §§ 1681a(d) and (f).

28.     The FCRA provides a number of protections for housing applicants who are subject to background checks and tenant screening reports.

29.     The FCRA imposes duties on consumer reporting agencies to ensure that consumer reports are accurate and that "consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681.

30.     Under 15 U.S.C. § 1681e(b), consumer reporting agencies are required "to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

31.     Likewise under the ICRAA, "[w]henever an investigative consumer reporting agency prepares an investigative consumer report, it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." Cal. Civ. Code § 1786.20.

32.     Further, under the ICRAA, "an investigative consumer reporting agency shall not furnish an investigative consumer report that includes information that is a matter of public record and that relates to an arrest, indictment, conviction, civil judicial action, tax lien, or outstanding judgment, unless the agency has verified the accuracy of the information during the 30-day period ending on the date on which the report is furnished." Cal. Civ. Code § 1786.18.

33.     Defendants disregarded these duties with respect to Plaintiff's tenant screening reports.

## FACTS

### RentGrow's First Inaccurate Tenant Screening Report

34.     In March 2017, Mr. White and his wife, Jill White ("Mrs. White"), began what eventually became two years of planning to move their family, which includes their 5, 7, and 12 year-old children and a cat and dog, from Roseville, California to Nashville, Tennessee so that they could be closer to family.

35.     In March 2019, Mr. White contacted American Homes 4 Rent ("Homes 4 Rent") by phone and began working with a Leasing Coordinator named Jill Neely ("Ms. Neely").

6

36. Mr. White specifically expressed to Ms. Neely that he and his wife were interested in finding a home to rent in the greater Nashville, Tennessee area that was big enough and suitable to house their family of five, as well as their dog and cat. Given the size of Mr. White's family and that he had pets, he informed Ms. Neely that he needed to find a home without carpet and with hardwood floors.

37. Mr. White also specifically informed Ms. Neely that he needed to find a suitable home to rent by June 7, 2019, because the lease on his Roseville, California home was going to expire that day.

38. In March 2019, Ms. Neely told Mr. White that in order to start his home search, locate a suitable home, and get approved by the first week of June 2019, he needed to provide all of his personal identification information and submit proof of income for him and Mrs. White, their bank statements, and other relevant documentation.

39. In April 2019, after processing Mr. and Mrs. White's personal information and financial documentation, Ms. Neely informed Mr. White that he and Mrs. White were qualified to rent a home in the greater Nashville, Tennessee area for as much as $1,996.00 per month.

40. Thereafter, Ms. Neely assisted Mr. and Mrs. White with their home search. After spending about a month searching for the right home, Mr. and Mrs. White found their dream home in early May 2019, located at 2948 Augusta Trace Drive, Spring Hill, Tennessee 37174 ("the Springhill property"). The Spring Hill property had four bedrooms, three bathrooms, beautiful new windows and hardwood floors, and the rent was within their budget at $1,695.00 per month.

41. The Spring Hill property is one of many Tennessee properties managed by Homes 4 Rent.

7

42.     On May 15, 2019, Mr. White contacted Ms. Neely by phone and informed her that he and Mrs. White had found their dream home in Spring Hill, Tennessee and wanted to move forward with getting approved for their cross-country move. Ms. Neely instructed Mr. White to log into the Homes 4 Rent website and complete and submit the rental application and payment, which would cover fees for the application and background check. She then informed Mr. White that once the rental application was submitted and his background check was completed, someone from Homes 4 Rent would contact him by phone to discuss the final steps that would need to be taken to finalize his lease.

43.     On May 15, 2019, at approximately 9:00 A.M. PST, Mr. White logged onto the Homes 4 Rent website and completed and submitted his rental application along with his debit card information for payment of the application and background check fee.

44.     Homes 4 Rent contracted with RentGrow to provide tenant screening reports, which are consumer reports also known as background checks, on prospective tenants used to determine whether a prospective tenant was eligible to rent a home.

45.     On or about May 15, 2019, Homes 4 Rent obtained a consumer report regarding Mr. White from RentGrow, which it calls a "Screening Report," including a compilation of Mr. White's credit report, a criminal record report, and eviction report.

46.     The Screening Report is a consumer report regulated by the FCRA and an investigative consumer report regulated by the ICRAA.

47.     The "Premium National Criminal Records Search" section of the Screening Report included the following information:

**FELONY ATTEMPT/ROBBERY  RECORD 1 – CHARGE 1**

**File Date:** 05/15/2009          **Case #:** 62-90148A
**State of Record:** CA

8

**Offense:** FELONY ATTEMPT/BURGLARY
**Offense Date:** 05/09/2009
**Disposition:** CONVICTED GUILTY/ NOLO CONTENDERE PLEA/ 3
YEARS FORMAL PROBATION/ 180 DAYS CONFINEMENT/ FILE
DATE 05-15-2009/ PLEASE NOTE MIDDLE NAME AS PROVIDED
ON RECORD/ PLEASE NOTE SUFFIX AS PROVIDED ON RECORD
**Disposition Date:** 03/25/2010
**ID Number:** G-0031900972003814958 2
**County:** SACRAMENTO
**Result Date:** 2012-11-06
**Method Verified:** NAME, DOB
**Search Type**: COUNTY

48. RentGrow's reporting was false. The aforementioned felony charge and guilty disposition should not have been included in Mr. White's Screening Report.

49. Any member of the public who took a five minute cursory review of Mr. White's public record on the internet could confirm the flaw in the RentGrow Screening Report about Mr. White. It is indisputable that prior to supplying the Screening Report about Mr. White to Homes 4 Rent, RentGrow failed to consult current public records in Sacramento County, California, which indicated that the above-mentioned charge and conviction was dismissed pursuant to a Dismissal Order Pursuant to Section 1203.4 of the Penal Code ("Dismissal Order") signed by Sacramento County Superior Court Judge Ben Davidian on October 13, 2015.

50. Additionally, the "Result Date" of the inaccurate criminal record reported by RentGrow is from 2012 and has not been updated in over six and a half years. In preparing Plaintiff's Screening Report, RentGrow knowingly relied upon outdated criminal record information, which is irresponsible given the frequency with which criminal dispositions change, particularly in California under Cal. Pen. Code § 1203.4.

9

51.     As a result of RentGrow's false and inaccurate reporting, the status of the "Criminal Search" section of Mr. White's Screening Report indicated: "Does Not Meet Property Requirements."

52.     As a result of RentGrow's false and inaccurate reporting, the status of the "Individual Result" section of Mr. White's Screening Report indicated: "Decline Applicant." More specifically, the "Reasons for Result" section indicated: "Criminal History Does Not Meet Property Requirements and Risk Score in Conditional Range."

53.     RentGrow violated 15 U.S.C. § 1681e(b) and Cal. Civ. Code § 1786.20(b) by failing to establish or to "follow reasonable procedures to assure maximum possible accuracy" in the preparation of Mr. White's Screening Report and the files it published and maintained.

54.     On or about May 15, 2019, about three hours after Mr. White had submitted his online application to Homes 4 Rent, he received an email from Homes 4 Rent informing him that his rental application had been denied.

55.     Immediately thereafter, Mr. White placed a telephone call to Homes 4 Rent's Leasing Office in Nashville, Tennessee, and spoke with Ms. Neely. Mr. White asked Ms. Neely for an explanation as to why his rental application had been denied. Ms. Neely stated that his rental application had been denied either due to his criminal or eviction history, but could not specify. Mr. White requested to speak with a Manager and Ms. Neely informed him that someone would call him back with more information.

56.     Shortly thereafter, Mr. White received a telephone call from the Leasing Manager at Homes 4 Rent, Holly Kimbrough ("Ms. Kimbrough").

10

57.     Ms. Kimbrough immediately informed Mr. White that Homes 4 Rent was not going to be able to rent him a home in Tennessee because his background check came back with a felony and she's not allowed to rent to "criminals."

58.     Mr. White was humiliated that his potential landlord now thought he was a convicted felon, especially considering that he had truthfully stated in his rental application that he was not a convicted felon.

59.     Mr. White, shocked and confused, immediately asked Ms. Kimbrough where Homes 4 Rent had obtained the information stating that he was a felon. Ms. Kimbrough stated that Homes 4 Rent received the information from RentGrow. As Mr. White began to defend himself, stating that RentGrow's information was in accurate, Ms. Kimbrough hung up the telephone.

**Mr. White Disputes the Misinformation in RentGrow's First Tenant Screening Report and RentGrow Acknowledges that it Published Misinformation and Corrects Mr. White's Screening Report**

60.     Having no idea who or what "RentGrow" was, Mr. White performed a Google search and located RentGrow's website and contact information. Thereafter, he placed a telephone call to RentGrow and spoke to a female representative in the Dispute Department. Mr. White informed the representative that RentGrow had just submitted an inaccurate Screening Report to Homes 4 Rent and he was calling to dispute the information contained within the Screening Report. The representative asked Mr. White if he had a copy of the Screening Report. Mr. White responded in the negative. The representative then stated that he needed to request a copy of his Screening Report through RentGrow's website before he could submit a dispute.

61.     Thereafter, Mr. White accessed RentGrow's website and requested a copy of his Screening Report.

11

62.     On May 16, 2019, Mr. White received email correspondence from RentGrow containing a secure link to a copy of the Screening Report provided to Homes 4 Rent on May 15, 2019. This copy of the Screening Report was inaccurate and contained the felony conviction.

63.     Immediately thereafter, Mr. White accessed the dispute page on RentGrow's website and provided his personal identification information; specifically indicated that he was disputing because RentGrow reported him as a convicted felon and such reporting was inaccurate because a Dismissal Order had been entered by the court in October 2015, which set aside the guilty verdict and dismissed the accusatory pleading; and uploaded a copy of his driver's license and a copy of the Dismissal Order.

64.     Immediately after submitting his online dispute and supporting documentation, Mr. White followed up with a phone call to RentGrow's Dispute Department. He was again connected to the same female representative he had spoken to previously. Mr. White stated that he was calling about an urgent matter, explained his situation in detail, and requested confirmation that RentGrow had received his dispute and supporting documentation. The representative confirmed receipt of Mr. White's dispute and supporting documentation and then apologized for the inaccurate reporting and stated "this never should have happened, we'll correct your report and send out a new report to you and American Homes 4 Rent" as soon as possible.

65.     On May 17, 2019, Mr. White received email correspondence from RentGrow containing a secure link to a copy of the Screening Report provided to Homes 4 Rent on May 17, 2019. This copy of the Screening Report was accurate and did not contain any criminal record information.

66.     The status of the "Criminal Search" section of Mr. White's corrected Report indicated: "Dispute Completed, Meets Property Requirements."

12

67. The status of the "Individual Result" section of Mr. White's corrected Screening Report indicated: "Pending—If ACCEPTED, Guarantor & Manager Review Required." More specifically, the "Reasons for Result" section indicated: "Risk Score in Conditional Range" and the "Items to Review" section indicated: "Consumer Dispute Completed, CA – Supplemental Criminal Records Search in Progress."

68. That same day, after receiving his corrected Screening Report, Mr. White received a telephone call from Emily Houser ("Ms. Houser"), Leasing Coordinator at Homes 4 Rent. Ms. Houser informed Mr. White that Homes 4 Rent had received an updated copy of his Screening Report from RentGrow. However, Ms. Houser told Mr. White that Homes 4 Rent would not be able to clear him and approve his rental application unless he sent in a copy of his Dismissal Order, which he had previously supplied to RentGrow. Mr. White told Ms. Houser that would not be a problem and immediately emailed a copy of his Dismissal Order to Ms. Houser and Ms. Kimbrough.

69. After receiving a copy of Mr. White's Dismissal Order, Ms. Houser and Ms. Neely contacted Mr. White by telephone to discuss the next steps in the approval process. They informed Mr. White that he would need to start the entire rental application process over again in order to get approved, which included resubmitting his personal information and his and Mrs. White's financial information and documentation, another rental application, and undergoing another background check.

70. Mr. White resubmitted all of the required information by the close of business on May 17, 2019.

**RentGrow's Second Inaccurate Tenant Screening Report**

13

71.     On or about May 17, 2019, Homes 4 Rent obtained a second consumer report regarding Mr. White from RentGrow, which it calls a "Screening Report," including a compilation of Mr. White's credit report, a criminal record report, and eviction report.

72.     The Report is a consumer report regulated by the FCRA.

73.     The "Premium National Criminal Records Search" section of the Report included the following information:

**FELONY ATTEMPT/ROBBERY RECORD 1 – CHARGE 1**

**File Date:** 05/15/2009          **Case #:** 62-90148A
**State of Record:** CA
**Offense:** FELONY ATTEMPT/BURGLARY
**Offense Date:** 05/09/2009
**Disposition:** CONVICTED GUILTY/ NOLO CONTENDERE PLEA/ 3 YEARS FORMAL PROBATION/ 180 DAYS CONFINEMENT/ FILE DATE 05-15-2009/ PLEASE NOTE MIDDLE NAME AS PROVIDED ON RECORD/ PLEASE NOTE SUFFIX AS PROVIDED ON RECORD
**Disposition Date:** 03/25/2010
**ID Number:** G-00319009720038149582
**County:** SACRAMENTO
**Result Date:** 2012-11-06
**Method Verified:** NAME, DOB
**Search Type**: COUNTY

74.     RentGrow's reporting was false. The aforementioned felony charge and guilty disposition should not have been included in Mr. White's Screening Report.

75.     In fact, on May 15, 2019, two days prior to preparing and publishing the second grossly inaccurate and stigmatizing report to Homes 4 Rent, Mr. White put RentGrow on actual notice that it's decision to report the dismissed charge as a guilty conviction was inaccurate, and even provided a copy of the Dismissal Order establishing as much.

14

76.     Moreover, on May 15, 2019, RentGrow admitted that the felony charge and guilty disposition had been included in error, and, on May 17, 2019, RentGrow removed the criminal record from Mr. White's Screening Report after receiving his dispute.

77.     RentGrow obtained the above-referenced criminal record information from Sunshine Research.

78.     Sunshine Research's report about Mr. White's criminal history unlawfully included information about a criminal conviction despite the fact that the charge had been dismissed more than three years prior to its reporting.

79.     Specifically, it is indisputable that prior to supplying the report about Mr. White to RentGrow, Sunshine Research failed to consult current public records in Sacramento County, California, which indicate that the above-mentioned charge and conviction was dismissed pursuant to a Dismissal Order Pursuant to Section 1203.4 of the Penal Code ("Dismissal Order") signed by Sacramento County Superior Court Judge Ben Davidian on October 13, 2015.

80.     Additionally, the "Result Date" of the inaccurate criminal record information provided by Sunshine Research and reported by RentGrow is from 2012 and has not been updated in over six and a half years. In preparing Plaintiff's Screening Report, RentGrow knowingly relied upon outdated criminal record information, which is irresponsible given the frequency with which criminal dispositions change, particularly in California under Cal. Pen. Code § 1203.4.

81.     As a result of Defendants' false and inaccurate reporting, the status of the "Criminal Search" section of Mr. White's Screening Report indicated: "Does Not Meet Property Requirements."

82.     As a result of Defendants' false and inaccurate reporting, the status of the "Individual Result" section of Mr. White's Screening Report indicated: "Decline Applicant." More

specifically, the "Reasons for Result" section indicated: "Criminal History Does Not Meet Property Requirements and Risk Score in Conditional Range."

83.     RentGrow and Sunshine Research violated 15 U.S.C. § 1681e(b) and Cal. Civ. Code § 1786.20(b) by failing to establish or to "follow reasonable procedures to assure maximum possible accuracy" in the preparation of Mr. White's Screening Report and the files it published and maintained.

84.     On May 19, 2019, Mr. White received a telephone call from Ms. Neely and she informed him that Homes 4 Rent's previous decision to deny his rental application due to his criminal record was not going to change because it had received a second background check from RentGrow that once again reported a felony conviction. Mr. White, angry and confused, reminded Ms. Neely that RentGrow had already corrected his Screening Report once and that he had previously provided Homes 4 Rent with court documentation confirming that RentGrow's reporting was inaccurate. Ms. Neely stated that Homes 4 Rent was no longer willing to rent a home to him because of the criminal record information reported by RentGrow.

85.     On May 20, 2019, Mr. White placed a telephone call to RentGrow and once again spoke with the female representative in the Dispute Department that he had spoken to on two prior occasions. He once again stated that he was calling about an urgent matter, explained his situation in detail, and specifically stated that RentGrow had once again included inaccurate information in a Screening Report provided to Homes 4 Rent. He pleaded with the representative to correct his Screening Report and stated that he needed this issue resolved immediately because he was set to move his family to Tennessee the first week of June 2019 and needed an accurate report from RentGrow in order to be approved to rent a home. After the representative told Mr. White that she'd look into his issue, he requested information regarding the source of RentGrow's

16

information. The representative informed him that her records indicated that RentGrow obtained the felony conviction information from Sunshine Research, based in Florida. Mr. White requested the contact information for RentGrow's legal counsel, which the representative provided.

86.     That same day, Mr. White placed a telephone call to RentGrow's legal counsel, Brady Bestani ("Mr. Bestani"), and left a voicemail message requesting a call back.

87.     Later that same day, Mr. White received a telephone call from Mr. Bestani. After explaining his ordeal with RentGrow and Homes 4 Rent in detail, Mr. White demanded an explanation as to how RentGrow continued to report an inaccurate felony conviction on his Screening Report after he had disputed the first inaccurate report and provided a copy of the Dismissal Order establishing that RentGrow's reporting was, in fact, inaccurate. Mr. Bestani apologized numerous times for RentGrow's inaccurate reporting and tried to explain how RentGrow dropped the ball a second time, despite having been on actual notice that its initial reporting was inaccurate and having already corrected Mr. White's Screening Report previously. Mr. Bestani explained that after RentGrow corrected Mr. White's first report and got a request from Homes 4 Rent to run it a second time, it received criminal record information from Sunshine Research containing a felony conviction record for Mr. White that it inadvertently included in his report. Mr. White requested the contact information for Sunshine Research, which Mr. Bestani provided.

88.     Thereafter, at his wit's end, Mr. White placed a telephone call to Sunshine Research and spoke with the owner, Amber. After providing his identification information and explaining his situation in detail, he asked Amber where Sunshine Research had obtained court records indicating that he was a convicted felon. Amber stated that she contracts with court runners who located the criminal record information at issue. Mr. White informed Amber that whatever criminal

17

record information she had obtained and provided to RentGrow was grossly inaccurate and was costing him the ability to rent a home. He asked for her email address so that he could provide her with a copy of the Dismissal Order he received in October 2015 so that she could update her records. Amber provided her email address and Mr. White immediately emailed her a copy of the Dismissal Order. Mr. White then requested that Amber 1) correct the records in Sunshine Research's database to ensure that no additional inaccurate criminal record information was published in his name, and 2) contact RentGrow to inform it that the criminal record information it previously provided in his name was inaccurate and not up-to-date. Amber stated that she would not be correcting any of the criminal record information in his name, which was contained within Sunshine Research's database, and that her company could and would report it as a felony conviction, despite what was indicated on the Dismissal Order that was now in her possession.

89.    Shortly thereafter, Mr. White placed another telephone call to Mr. Bestani and asked him why RentGrow was using an unreliable vendor like Sunshine Research that refused to update the criminal record information in its database, even after receiving actual notice from a consumer that the information it reported was inaccurate and not up-to-date. Mr. Bestani informed Mr. White that RentGrow had corrected his second inaccurate Screening Report and provided an updated copy to Homes 4 Rent. Finally, Mr. Bestani stated that he was going to contact Homes 4 Rent on behalf of RentGrow and Mr. White to apologize for providing the misinformation and ensure that it be corrected once and for all.

90.    Later that same day, Mr. White sent an email to Ms. Neely at Homes 4 Rent requesting an update on the status of his rental application. Ms. Neely responded shortly thereafter, informing him that his rental application was still under review and that a Leasing Manager was consulting with an Underwriting Manager to see if it could still be approved. Mr. White responded,

18

thanking Ms. Neely for the update and reminding her that he was moving his family from California to Tennessee in two weeks and that the situation was becoming increasingly stressful on him and his family the closer it got to their moving date. Ms. Neely assured him that she would get an answer to him as soon as possible.

91.     On May 21, 2019, Mr. White placed a telephone call to Mr. Bestani to follow-up and requested a status update. Mr. Bestani informed him that he had yet to contact Homes 4 Rent but ensured him that his second inaccurate report had been corrected. Mr. White reiterated how urgent this issue was given the fact that he was moving his family from California to Tennessee the first week of June and now had less than two weeks to get his rental application and home rental approved.

92.     On May 22, 2019, Mr. White received a telephone call from Mr. Bestani at RentGrow informing him that he had spoken to Homes 4 Rent and management had decided that it was not going to consider his Dismissal Order and, therefore, there was nothing further that RentGrow could do to rectify the situation.

93.     Mr. White immediately placed a telephone call to Homes 4 Rent and requested to speak with a Leasing Manager. After being transferred to Ms. Kimbrough, Mr. White asked her why Homes 4 Rent was refusing to consider the Dismissal Order he had provided. Ms. Kimbrough stated that since receiving a copy of his Dismissal Order, Homes 4 Rent had received another "negative" Screening Report from RentGrow, which contained a felony conviction. Thus, Homes 4 Rent was unable to approve his rental application.

94.     Shortly thereafter, Mr. White sent an email to Ms. Kimbrough at Homes 4 Rent and requested that she forward him a copy of the "negative" Screening Report that RentGrow had most recently provided. Ms. Kimbrough stated that she did not have access to the Screening Report but

that RentGrow would provide him with additional information once Underwriting updated his application status.

95.     On or about May 28, 2019, Homes 4 Rent informed Mr. and Mrs. White that the only way it could try and approve them for a rental home in Tennessee was if Mrs. White reapplied with a cosigner and without Mr. White.

96.     But for RentGrow's false Screening Reports, Mr. White's rental application would have been accepted by Homes 4 Rent and he and his family would have been allowed to move into the Spring Hill property during the first week of June 2019.

97.     RentGrow doesn't have a reasonable procedure in place to assure maximal accuracy because it wouldn't make as much money if it implemented such procedures. It collects information from unreliable third party vendors, like Sunshine Research, which it repackages and sells as its rental screening products.

98.     Despite knowing that its procedures are unreasonable and do not assure the maximal accuracy required by the FCRA, RentGrow persists in utilizing procedures in reckless or knowing disregard for the rights of consumers, causing the very type of damages suffered by Mr. White.

99.     The injuries suffered by Mr. White as a direct result of RentGrow's erroneous reporting are the type of injuries that the FCRA and ICRAA were enacted to address.  Under common law, RentGrow's conduct would have given rise to causes of action based on defamation and invasion of privacy.

100.    As a direct result of RentGrow's conduct, Mr. White has suffered these injuries resulting in damages, including the inability to rent the home he desired; the expenditure of time and money looking for another home or rental unit; damage to his reputation; physical injury as a

result of emotional distress; damage to his relationship with his family and loved ones; loss of sleep; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, frustration, humiliation, and embarrassment; and other losses that are continuing in nature.

## CLAIMS FOR RELIEF
### COUNT I
### 15 U.S.C. § 1681e(b)
### Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy
### (Against Defendants RentGrow and Sunshine Research)

101. Mr. White relies on the factual allegations in this Complaint, which are the factual bases of each cause of action herein.

102. Defendants are "consumer reporting agencies" as defined by 15 U.S.C. § 1681a(f).

103. At all times pertinent hereto, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

104. At all times pertinent hereto, the above-mentioned tenant screening reports were "consumer reports" as that term is defined by 15 U.S.C. § 1681a(d).

105. Defendants violated 15 U.S.C. § 1681e(b) by failing to establish or to "follow reasonable procedures to assure maximum possible accuracy" in the preparation of Plaintiff's tenant screening reports and the files they published and maintained.

106. As a result of Defendants' violations of 15 U.S.C. § 1681e(b), Plaintiff has suffered actual damages including but not limited to, the inability to rent the home he desired for his family; the expenditure of time and money looking for another home or rental unit; the expenditure of time and money disputing and attempting to correct Defendants' inaccurate reporting; damage to his reputation; physical injury as a result of emotional distress; damage to his relationship with his family and loved ones; loss of sleep; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, frustration, humiliation, and embarrassment; and other losses that are continuing in nature.

107. Defendants willfully violated 15 U.S.C. § 1681e(b) in that their actions were in reckless disregard of the requirements of this provision. Thus, Defendants are liable for punitive damages pursuant to 15 U.S.C. § 1681n.

21

108.    In the alternative, Defendants negligently violated 15 U.S.C. § 1681e(b), which entitles Plaintiff to a recovery under 15 U.S.C. § 1681o.

109.    Pursuant to 15 U.S.C. § 1681o and § 1681n, Plaintiff is entitled to actual damages, statutory damages, punitive damages, and reasonable attorneys' fees and costs.

## COUNT II
## Cal. Civ. Code § 1786.20
**Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy**
**(Against Defendants RentGrow and Sunshine Research)**

110.    Mr. White relies on the factual allegations in this Complaint, which are the factual bases of each cause of action herein.

111.    Defendants are "investigative consumer credit reporting agencies" as defined by Cal. Civ. Code § 1786.2(d).

112.    At all times pertinent hereto, Plaintiff was a "consumer" as that term is defined by Cal. Civ. Code § 1786.2(b).

113.    The above-mentioned tenant screening reports are "investigative consumer reports" as that term is defined by Cal. Civ. Code § 1786.2(c).

114.    Defendants negligently and willfully failed "to follow reasonable procedures to assure maximum possible accuracy" in preparing Plaintiff's tenant screening reports. Cal. Civ. Code § 1786.20(b).

115.    Pursuant to Cal. Civil Code § 1786.50, Plaintiff is entitled to his actual damages, injunctive relief, statutory damages, punitive damages, costs and attorneys' fees.

## PRAYER FOR RELIEF

116.    WHEREFORE, Plaintiff prays for relief as follows:

a)    For declaratory judgment that Defendants negligently and/or willfully violated the FCRA and ICRAA as alleged herein;

22

b)      For preliminary, permanent and mandatory injunctive relief prohibiting Defendants, their officers, agents and all those acting in concert with them, from committing in the future those violations of law herein alleged;

c)      For an order awarding Plaintiff actual damages, including all out-of-pocket loss and all other sums of money owed to Plaintiff, together with interest on these amounts, according to proof;

d)      For non-economic damages due to Plaintiff's pain and suffering;

e)      For compensatory, statutory and punitive damages, as provided by the FCRA and ICRAA, according to proof;

f)      For attorneys' fees and costs, pursuant to 15 U.S.C. §§ 1681n and 1681o, and Cal. Civ. Code § 1786.50;

g)      Costs of suit; and

h)      Such other injunctive and equitable relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

117.     Plaintiff demands a trial by jury.


Respectfully submitted,

*/s/ Micah S. Adkins*
Micah S. Adkins
TN BAR NO. 036451
**THE ADKINS FIRM, P.C.**
1025 Westhaven Blvd., Suite 220
Franklin, Tennessee 37064
(615) 370.9659 Telephone
(615) 208.9632 Facsimile
MicahAdkins@ItsYourCreditReport.com
*ATTORNEYS FOR PLAINTIFF*

23