# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| **THEODORE JAMES WHITE, III,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) NO. 3:19-cv-00626 |
| | ) |
| **RENTGROW, INC., et al.,** | ) |
| | ) |
| **Defendants.** | ) |

## MEMORANDUM OPINION AND ORDER

Theodore James White, III filed an Amended Complaint under the Fair Credit Reporting Act ("FCRA") and the parallel California statute against RentGrow, Inc., Sunshine Research, Inc., and Backgroundchecks.com ("BGC"). (Doc. No. 30.) White entered separate settlement agreements with Sunshine and BGC, and filed a notice stating that his claims against RentGrow remain before the Court. (Doc. No. 65.) RentGrow filed a Motion to Enforce Settlement Agreement and for Sanctions (Doc. No. 68), arguing that the Court should dismiss White's claims against RentGrow with prejudice based on the terms of the BGC settlement agreement. The parties briefed this Motion extensively. (Doc. Nos. 69, 73, 74, 79.)

Before the Court is a Report and Recommendation ("R&R") recommending that RentGrow's Motion be granted in part and denied in part. (Doc. No. 93.) RentGrow filed Objections (Doc. No. 97) and White filed a Response (Doc. No. 102). RentGrow also filed an Interim Motion for Leave to File the Objections under Seal. (Doc. No. 98.) The Court has conducted a de novo review in accordance with Rule 72 of the Federal Rules of Civil Procedure and agrees with the recommended disposition. The Court will address RentGrow's Interim Motion to Seal before turning to its three specific objections below.

## I. Interim Motion to Seal

On December 4, 2020, RentGrow submitted an Interim Motion for Leave to File its Objections under Seal because the Objections cite and attach White's deposition transcript.[1] (Doc. No. 98.) RentGrow does not believe that White's deposition transcript should remain under seal but notes that the Protective Order entered in this case provides that all deposition testimony is automatically and temporarily treated as "Confidential" for 30 days after the deposition. (Id. at 1 (citing Doc. No. 62 ¶ 2(b)).

The 30-day period following White's deposition has now passed, and White has not attempted to demonstrate why his deposition should remain under seal. See Local Rule 5.03(a)–(b) (providing that the party who "seeks to restrict access to the materials retains the burden of" "demonstrat[ing] compelling reasons to seal the documents and that the sealing is narrowly tailored to those reasons by specifically analyzing in detail, document by document, the propriety of secrecy, providing factual support and legal citations"). Accordingly, RentGrow's Interim Motion (Doc. No. 98) will be denied as moot, and the Clerk will be directed to remove Doc. No. 97 from under seal.

## II. "Sua Sponte" Reliance on Texas Case Law

RentGrow first objects that the Magistrate Judge erred by relying "on Texas state cases that neither party had cited, particularly where neither party had advocated for application of Texas law and RentGrow consequently had no opportunity to address whether Texas law differed from

---

[1] The Court also notes that, with White's Response to RentGrow's Objections, White purported to file two attachments under seal containing testimony from two different depositions. (See Doc. Nos. 102-2, 102-3.) White also redacted citations to this testimony in the Response. (See Doc. No. 102 at 8.) But White did not actually *file* anything under seal. Instead, he filed otherwise blank pages that *say,* "FILED UNDER SEAL." (Doc. Nos. 102-2 at 2, 102-3 at 2.) Regardless, in the analysis that follows, the Court does not rely on these two absent attachments.

2

any of the cases RentGrow did cite in its briefing." (Doc. No. 97 at 8.) This argument is completely meritless.

It was RentGrow that, in the original brief accompanying its Motion, noted that the BGC settlement agreement "specifies it is government [sic] by Texas law." (Doc. No. 69 at 3–4.) RentGrow then quoted a Texas state court case for the proposition that, "[u]nder Texas law, 'the intent of the contracting parties controls' 'whether a third party may enforce the provisions of a contract between others.'" (Id. at 4 (quoting Grayson v. Grayson Armature Large Motor Div., Inc., No. 14-09-00748-CV, 2010 WL 2361432, at *3 (Tex. App. June 15, 2010)). Thus, RentGrow's argument that it did not "*advocate*[] for application of Texas law" (Doc. No. 97 at 8 (emphasis added)) is, at best, a disingenuous attempt to draw a distinction where none exists.

RentGrow was on notice that Texas law applies to the BGC settlement agreement because RentGrow itself raised the choice-of-law issue. Accordingly, the Magistrate Judge did not err by relying on Texas state court decisions discussing the construction and enforcement of settlement agreements under Texas state law. This objection is overruled.

### III. Application of Texas Law to the Record Before the Magistrate Judge

Next, RentGrow argues that the Magistrate Judge erred by concluding that the BGC settlement agreement "did not release all of [White's] claims against RentGrow under Texas law." (Doc. No. 97 at 8.) For context, White alleges that RentGrow provides landlords with tenant screening reports the landlords use to decide whether to rent to certain applicants. (Doc. No. 30 ¶ 2.) These screening reports include information about the applicant's criminal history. (Id.)

White alleges that, after he submitted a rental application to a potential landlord, RentGrow obtained false criminal history information about him from two separate sources—BGC and Sunshine Research—on two separate occasions. (See id. ¶¶ 3, 8.) First, on or around May 15, 2019,

3

BGC allegedly provided RentGrow with false information that White was a convicted felon. (Id. ¶¶ 51, 53–56, 70–71.) RentGrow included this false information in a screening report for White's potential landlord (see id.), and this information resulted in the landlord rejecting White's rental application via email that same day. (Id. ¶¶ 57–58, 60, 63.) Then, on or about May 17, 2019, Sunshine Research provided RentGrow with the same false information. (Id. ¶¶ 80, 82–83, 86–89.) RentGrow again provided this false information to White's potential landlord (see id.), and this information resulted in the landlord again rejecting White on May 19. (Id. ¶¶ 90–91, 94.)

After suing RentGrow, BGC, and Sunshine Research, White entered separate settlement agreements with BGC and Sunshine. (See Doc. No. 65.) Section 3 of the BGC settlement agreement provides that White gave up "any claims that are in any way related to any consumer report or file disclosure that [BGC] provided about [White]." (Doc. No. 69 at 12.) As the Magistrate Judge notes, White concedes that this language releases RentGrow from all claims "related to the report of White's criminal history that BGC provided (the BGC background report) and the screening report RentGrow prepared for Homes 4 Rent based on the BGC background report (the Rentgrow/BGC report)." (Doc. No. 93 at 6.) The Magistrate Judge was therefore correct to frame the remaining issue as follows: "[W]hether White's claims arising out of the Sunshine background report 'are in any way related to any consumer report or file disclosure' that BGC provided to RentGrow." (Id. at 7.)

Applying Texas law, the Magistrate Judge answered that question "no." (Doc. No. 93 at 7–11 & n.1.) RentGrow complains that, in doing so, the Magistrate Judge improperly relied on Texas state court cases that do not interpret the phrase "related to," and that the phrase "related to" is, in fact, "very broad" under Texas law. (Doc. No. 97 at 8–9.) True, Texas courts have stated that "[t]he phrase 'relates to,' in particular, is recognized as a very broad term." See RSR Corp. v. Siegmund,

4

309 S.W.3d 686, 701 (Tex. App. Mar. 26, 2010) (collecting cases and quoting In re Wilmer Cutler Pickering Hale & Dorr LPP, No. 05-08-01395-CV, 2008 WL 5413097, at *4 (Tex. App. Dec. 31, 2008)). But Texas courts also hold that a settlement agreement "must be read as whole, not by 'isolating a certain phrase, sentence, or section of the agreement." Petrobras Am., Inc. v. Astra Oil Trading NV, No. 14-18-00728-CV, 2020 WL 4873226, at *6 (Tex. App. Aug. 20, 2020) (quoting Baty v. ProTech Ins. Agency, 63 S.W.3d 841, 848 (Tex. App. 2001)).

Further, RentGrow does not acknowledge a key requirement for effectively releasing claims under Texas law. As the Magistrate Judge noted, "[f]or a settlement agreement to release claims under Texas law, 'the releasing instrument must 'mention' the claim to be released." (Doc. No. 93 at 8–9 (quoting Victoria Bank & Trust Co. v. Brady, 811 S.W.2d 931, 938 (Tex. 1991)); see also Petrobras, 2020 WL 4873226, at *6 (applying this statement of the law in Brady). "Claims that are not clearly within the subject matter of the release are not discharged, even if they exist when the release is executed." Petrobras, 2020 WL 4873226, at *6 (citing Brady, 811 S.W.2d at 938 and Baty, 63 S.W.3d at 848). "The 'mention' requirement does not bar general, categorical releases, but they are narrowly construed." RTKL Assocs., Inc. v. Transcon. Realty Invs., Inc., No. 05-11-00786-CV, 2012 WL 6114887, at *4 (Tex. App. Dec. 10, 2012) (quoting Duncan v. Cessna Aircraft Co., 665 S.W.2d 414, 422 (Tex. 1984)).

The Court agrees with the Magistrate Judge's application of this requirement. As the Magistrate Judge explained, the BGC settlement agreement "does not contain a broad release of all possible claims against any party who can enforce the agreement." (Doc. No. 93 at 9.) Instead, the release language "identifies a specific transaction to which it applies—BGC's providing White's criminal background report to RentGrow." (Id.) And Sunshine Research's providing White's criminal background information to RentGrow was "a separate transaction—one not

5

related to the criminal background report that BGC provided to RentGrow." (Id. at 10.) Thus, because the Sunshine Research transaction is not mentioned in the settlement agreement, it "does not release RentGrow from White's claims related to the Sunshine background report." (Id. (footnote omitted)).

RentGrow argues for a broad reading of the release language that encompasses all of White's claims (Doc. No. 97 at 9), but the three cases on which it relies are distinguishable. Two involve more expansive release language than that found in Section 3 of the BGC settlement agreement. See Petrobras, 2020 WL 4873226, at *7 (quoting Horseshoe Bay Resort, Ltd. v. CRVI CDP Portfolio, LLC, 415 S.W.3d 370, 384 (Tex. App. 2013)) (noting that the relevant language included a "notwithstanding anything to the contrary" clause, which is "'[s]uperordinating language' that 'shows which provision prevails in the event of a clash'"); Stafford v. Allstate Life Ins. Co., 175 S.W.3d 537, 542 (Tex. App. 2005) (noting that, "[b]y its language, the release applies to, 'any and all past, present or future claims, . . . whether based on a tort, contract or other theory of recovery, . . . which may hereafter accrue or otherwise be acquired on account of, or in any way growing out of, or which are the subject of the Complaint'") (footnote omitted). And one addressed whether a release must "specifically denominate a cause of action . . . to release that claim," Mem'l Med. Ctr. of E. Tex. v. Keszler, 943 S.W.2d 433, 434 (Tex. 1997)—a matter not at issue here.

Finally, the Court notes RentGrow's undeveloped argument that the Magistrate Judge erred by "incorrectly conclud[ing] that [White's] decision to join RentGrow, BGC, and Sunshine as codefendants under Fed. R. Civ. P. 20(a)(2) was not relevant to determining whether [White's] claims against RentGrow are 'in any way related to' the information that RentGrow received from BGC." (Doc. No. 97 at 7–8.) In RentGrow's Reply in support of the Motion, RentGrow argued that White's "decision to join RentGrow, BGC, and Sunshine as codefendants" under Rule 20

6

requires dismissal under the terms of the BGC settlement agreement. (Doc. No. 74 at 2–3.) In both the Reply and the Objections, however, RentGrow does not cite any case, in Texas or elsewhere, in which a court considered the effect of permissive joinder of defendants under Rule 20 on the construction of release language in a settlement agreement. And as the Magistrate Judge noted, RentGrow's argument leads to an untenable result where, "in an action with multiple defendants," any settlement agreement including a "relates to" clause in the release language "would require automatic dismissal of all claims in [the] action." (Doc. No. 93 at 10 n.1.)

In short, the Magistrate Judge did not err in applying Texas law to conclude that the BGC settlement agreement preserves White's claims against RentGrow related to criminal history information provided by Sunshine Research. RentGrow's second objection is overruled.

### IV.    Subsequent Discovery

Third, RentGrow argues that the Motion to Enforce Settlement Agreement should be granted based on evidence obtained in discovery that became available after the Magistrate Judge entered the R&R. (Doc. No. 97 at 10.) This evidence includes an affidavit from a representative of White's potential landlord (Doc. No. 97-1 ("Landlord Aff.")) and deposition testimony from RentGrow's corporate representative (Doc. No. 97-2 ("Hennessey Dep.")) and White (Doc. No. 97-3 ("White Dep.")).

As a threshold matter, the Court is authorized to "receive further evidence" that was not before the Magistrate Judge. 28 U.S.C. § 636(b)(1)(C). "[D]istrict courts have the discretion, though they are not required, to consider evidence presented for the first time in a party's objections to a magistrate judge's report." Muhammad v. Close, No. 08-1944, 2009 WL 8755520, at *2 (6th Cir. Apr. 20, 2009) (citing United States v. Howell, 231 F.3d 615, 621 (9th Cir. 2000) and Freeman v. Bexar, 142 F.3d 848, 850–53 (5th Cir. 1998)). However, "the district court 'must

7

actually exercise its discretion, rather than summarily accepting or denying' the new evidence," id. (quoting Howell, 231 F.3d at 622), and it "does not reflect an actual exercise of [] discretion" to reject evidence "simply because it had not been presented to the magistrate judge." Id.

Here, RentGrow states that the Hennessey and White deposition transcripts were not available when the Magistrate Judge entered the R&R on November 19, 2020. (Doc. No. 97 at 4.) White also had an opportunity to respond to the new evidence and does not object to the Court considering it. (See Doc. No. 102.) Accordingly, the Court will not ignore the new evidence presented in RentGrow's Objections.

Based on the new evidence, RentGrow argues that BGC's provision of criminal history information and Sunshine Research's provision of criminal history information were not, as the Magistrate Judge characterized them, two separate transactions, but rather "were just two components of the same screening report." (Doc. No. 97 at 11 (emphasis omitted)). However, RentGrow recognizes, based on the Landlord Affidavit, that White's potential landlord "notified [White] two times that his screening showed a criminal record" due to separate transmissions of information by BGC and Sunshine Research. (Id. at 5–6 (citing Landlord Aff. ¶¶ 5–8)). And RentGrow recognizes, based on the Hennessey Deposition, that this required White to dispute his criminal history on two separate occasions. (Id. at 6 (citing Hennessey Dep. 292:22–293:15)).

RentGrow also points to White's deposition testimony to establish the overlap between the information supplied by BGC and the information supplied by Sunshine Research, and the compounding effects of Sunshine Research supplying that information to RentGrow for a second time. (Id. at 11–12 (citing White Dep. 92:17–93:1, 260:10–261:5, 291:11–293:4, 296:16–297:17, 323:21–326:15, 351:8–352:1, 359:8–17, 361:3–6)). True, White testified that BGC and Sunshine provided the same false criminal history information. (White Dep. 260:10–261:5.) But as White

8

argues, he can maintain claims against RentGrow for failing to "follow reasonable procedures to assure maximum possible accuracy" of information provided by Sunshine that do "not rely on the existence of the BGC information." (Doc. No. 102 at 15 (quoting 15 U.S.C. § 1681e(b) (FCRA) and Cal. Civ. Code § 1786.20(b) (parallel California statute)).

As to the compounding effects of Sunshine supplying the information a second time, White also testified that he suffered damages uniquely attributable to Sunshine. (Doc. No. 102 at 14–15 (citing White Dep. 349:13–24, 350:1–11, 350:23–24, 351:1–7, 352:19–24, 353:3–17)). The Court agrees with the Magistrate Judge, that "whether and how severely White may have limited his ability to prove damages against RentGrow by settling with BGC is a matter to be determined at a later stage of litigation." (Doc. No. 93 at 11.) The effect of the BGC settlement agreement on "White's ability to prove his claims" is a separate issue from whether "those claims are [] foreclosed entirely." (Id.) At this stage, it suffices to say that Texas law does not support the conclusion that the BGC settlement agreement released RentGrow entirely from all of White's claims, even considering the new evidence presented in RentGrow's Objections. Accordingly, RentGrow's third objection is overruled.

## V.     Request for Sanctions

Finally, RentGrow also requests all fees and costs it incurred in defending this case since the date White signed the BGC settlement agreement because White's "continued pursuit of claims against RentGrow" after that time was "unreasonable, vexatious, in bad faith, for purposes of harassment, wanton, and for oppressive reasons." (Doc. No. 68 at 2.) The Magistrate Judge concluded that sanctions were not warranted because RentGrow has not been released from all of White's claims against it. (Doc. No. 93 at 11.) RentGrow asks the Court to reject the Magistrate Judge's premise and conduct a de novo review of its request for sanctions. (Doc. No. 97 at 13–14.)

9

Because the Court agrees with the Magistrate Judge's premise, however, RentGrow's request for sanctions will be denied.

## VI. Conclusion

For these reasons, RentGrow's Interim Motion for Leave to File the Objections under Seal (Doc. No. 98) is **DENIED AS MOOT**, and the Clerk is **DIRECTED** to remove Doc. No. 97 from under seal.

The R&R (Doc. No. 93) is **APPROVED** and RentGrow's Motion to Enforce Settlement Agreement and for Sanctions (Doc. No. 68) is **GRANTED IN PART** and **DENIED IN PART**. Specifically, the Motion is **GRANTED** as to White's claims related to BGC's provision of criminal history information to RentGrow and **DENIED** as to White's claims related to Sunshine Research's provision of criminal history information to RentGrow. RentGrow's request for sanctions is also **DENIED**.

The case is returned to the Magistrate Judge for appropriate case management.

IT IS SO ORDERED.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE